JOHN A. HAMILTON ET AL. vs. RICHARD H. CLARKE ET AL.

EQUITY. No. 9063.

{ Decided February 2, 1885.
{ The CHIEF JUSTICE and Justices MAC ARTHUR and JAMES sitting.

Where a sale of realty is directed to be made after the death of tenant for life, who is one of two executors, and there is no specific mention as to by whom the sale is to be made, there is no power of sale in the surviving executor; but the court will, on application of the parties interested, appoint a trustee to sell.

STATEMENT OF THE CASE.

John B. Boone died July 17, 1859, testate, seized of two lots of ground in the city of Washington, both improved, and worth about $10,000. His will, dated June 17, is as follows:

"First. It is my will, and I do order that all my just debts and funeral expenses be duly paid and satisfied, as soon as conveniently can be after my decease, out of the first moneys that shall come. into the hands of my executors from so much of my personal estate as may be necessary to meet and fully discharge the same.

"Item. I give and bequeath to my beloved wife, Jane E. Boone, in addition to her right of dower at common law, all my personal property of every kind and description whatsoever and wheresoever situated, after the payment of my just debts and funeral expenses, during her natural life, to use, enjoy and dispose of the same, and at her death to dispose of the same, as she may deem fit and proper.

"Item. I give and devise to my said loving wife, Jane E. Boone, all my real estate, being part of lot numbered 15, in square 347, with the buildings thereon; and also the brick house and lot in square No. 348, all being and lying in the city of Washington, D. C., for and during her natural life, to have, use and enjoy the same; and at her death it is my will that the sum of three hundred dollars ($300) shall be paid to my beloved nephew, Alexander Hamilton, out of the proceeds of the sale of my real estate aforesaid.

"Item. It is my will, and I direct, that at the death of

my said wife, Jane E. Boone, all my real estate as herein devised shall be sold, and, after paying the legacy above mentioned to my said nephew, Alexander Hamilton, or to his heirs, the residue to be divided into two equal parts or moieties—the one half or moiety, to be equally divided between my brothers, Sylvester Boone, Edward D. Boone, and my sisters, Mary Rose Bowling and Sarah Ann Hamilton, each to have equal shares; and in case of the death of either of them, then to the heirs of said deceased in the same proportion. Item. And it is my will that the other half or moiety of the proceeds of my real estate go to the heirs of my said wife after her death, or to such person or persons as she may devise and bequeath the same to.

"Lastly, I hereby appoint my loving wife, Jane E. Boone, and my trusty and well beloved friend, Richard H. Clarke, executors of this, my last will and testament.

"JOHN B. BOONE."

The widow, Jane E. Boone, and the defendant, Richard H. Clarke, qualified as executors. They filed a final account showing payment of all debts and a distribution of $726.50 to the legatee.

Jane E. Boone had the full possession and benefit of the real estate from her husband's death to January 25, 1884, when she died.

Clarke, the complainant, in Equity Cause No. 8921, filed his bill to have the will construed as to his authority, as surviving executor, to sell the real estate.

Whereupon, the complainants filed the bill in this cause, stating they are advised that said Clarke has no power to sell the real estate by virtue of the will; that he has intimated that he would insist on receiving maximum commissions as executor for his services in selling; that many of the beneficiaries are in poor circumstances, and desire an economical sale, and that John A. Hamilton or Frank D. Orme, or both, who are responsible parties and interested in the estate, will make sale and distribution, if appointed by the court, without any commissions whatever.

That the parties to this suit are the only ones having any interest in the property.

The answer of Richard H. Clarke admitted, substantially, all the material facts of the bill, but raised the question of law as to his power and duty, as the surviving executor under the will of Boone, claiming that the power of sale was given by implication, and survives to him.

Proof was taken by complainants, establishing the averments of the bill, and showing that the defendant, Clarke, was a non-resident of this District, and has been for about twenty years.

On hearing, the court below consolidated the causes, and decreed: "That the defendant, Richard H. Clarke, as surviving executor of the will of John Baptist Boone, has full power under said will to make sale and conveyance of the real estate therein directed to be sold."

And from this decree an appeal was taken.

EDWARDS & BARNARD for complainants:

The only questions in controversy in this suit, are—

1st. Has the defendant, Clarke, any power, as trustee or surviving executor, under the will of John Baptist Boone, to sell and convey the real estate described? And—

2d. If any such power can be implied, does not his long continued non-residence from this District, warrant the court, on application of the beneficiaries, in substituting some one else as such trustee in his stead?

We maintain that any power which is given by will to executors, either expressly or by implication, is given to all of them; and that all can do whatever one could do, if only one was named; and that a survivor of two can have no greater authority than the two could have together. In other words, that the office of executor is a single office, though it be filled with two or more persons; and when so filled with two or more persons, they have all powers jointly, and no power which could not be exercised by them jointly, could survive.

All the powers under a will come into life at the death of

the testator; and no new power could arise by implication in one executor by the death of a co-executor.

In the case of Bentham *vs.* Wiltshire, 4 Madd., 44, the court says, "that the sale is directed to be made after the death of the tenant for life, who was one of the executors; there is here, therefore, no power of sale in the executors."

This question is also considered in the following cases: Allum *vs.* Fryer, 3 Ad. & Ell. (N. S..), 442 (43 Eng. Com. Law, 813); Patton *vs.* Randall, 1 Jacobs & Walker, 189; *In re* Will of Fox, 52 N. Y., 536; Lippincott *vs.* Lippincott, 4 C. E. Greene, 121.

By the act of Md., 1785, ch. 72, sec. 4, (Thompson's Digest, 127,) it is provided that "if any person hath died, or shall die, leaving real or personal estate to be sold for the payment of debts or other purposes, and shall not, by will or other instrument in writing, appoint a person or persons to sell or convey the same property," &c., " the chancellor shall have full power," &c., to appoint trustee to sell, &c., "in his discretion," &c.  4 Gill & J., 329.

If one named as executor has power to sell real estate without express authority by the will, still an additional method of sale is certainly provided by this statute ; and the power and jurisdiction of the court is ample for the appointment of a trustee, or the administration and settlement of a decedent's estate.

No bond was given as executors for the purposes of protecting the proceeds of sale of real estate ; and the defendant, Clarke, confesses that his power is questionable by filing his bill in No. 8,921, asking the court to say whether he has power or not.

If there were no question as to Mr. Clarke's power, the court would still have authority, on the request of beneficiaries, to remove him as trustee, and appoint some one in his stead, on the ground that he has removed from the District, and is permanently located in New York ; and also because there is no good reason why the property of those beneficiaries, should be paid to him in commissions, against their wishes, if the division can be as well made

without expense. Perry on Trusts, secs. 275, 281, 818; Uvedale vs. Ettrick, 2 Ch. Cases, 130; Smith vs. Smith, 10 Hare, 71, (44 Eng. Ch., 795); Commegys vs. The State, 10 Gill & J., 183, 184; Dorsey vs. Thompson, 37 Md., 45, 47. Ketchum vs. R. R. Co., 2 Woods, 532; Curtis vs. Smith, 60 Barb., 9.

The appointment of a trustee, whenever it is necessary to apply to the court in the premises, is always a discretionary matter, upon a view of the whole case; and the trustee to be appointed should, in all cases, reside within the jurisdiction of the court. Alex. Chan. Pr., 144; Hinkley's Test. Law, sec. 1879; Howard vs. Waters, 19 Md., 535; 1 Sugden on Powers, 139.

In this case, Mr. Clarke has voluntarily brought the subject matter of this trust before the court, and we maintain that the court should deal with it as may best accommodate the parties entitled to the proceeds of sales.

We submit, therefore, that the decree below should be reversed, in so far as it authorizes Mr. Clarke to make sale of said real estate, and Mr. Hamilton and Mr. Orme, or one of them, appointed in his stead.

IRVING WILLIAMSON for defendant Clarke:

Mr. Clarke claims that, as surviving executor under the will of John B. Boone, the power and duty of making sale of the real estate thereby directed to be sold, is vested in him, and in him alone, and the time of sale as fixed by the will having arrived, he cannot be divested of that power except by his consent or for misconduct. Neither of these grounds existing, his right, based as it is upon well settled rules of law, is unassailable.

"It is a well settled rule in chancery in the construction of wills as well as other instruments, that when land is directed to be sold and turned into money, or money is directed to be employed in the purchase of land, courts of equity, in dealing with the subject, will consider it that species of property into which it is directed to be converted."

This was the doctrine of the Supreme Court in Craig vs.

Leslie, 3 Wheaton, 577, and in Peters *vs.* Beverly, 10 Peters, 562, and, as is said in the last named case, "is founded upon the principle, that courts of equity regarding the substance, and not the mere form of contracts and other instruments, consider things directed or agreed to be done as having been actually performed."

The will now under consideration, in the most positive terms, directs, "that at the death of my said wife, Jane E. Boone, all my real estate as herein devised shall be sold," a "*legacy*" of $300 paid to his nephew, Hamilton, and the balance is to be applied in the payment of legacies to a variety and number of individuals who are not all of them of the heirs or next of kin of the testator. Such a division of the entire fund, to say nothing of the Hamilton legacy, constitutes legacies under the decisions; and such payments are equally within the province of an executor as the payment of debts.

A legacy is defined (Williams on Executors, sec. 497) to be "some particular thing or things given or left either by a testator in his testament, wherein an executor is appointed, to be paid or performed by his executor, or in a codicil or last will, wherein no executor is appointed, to be paid or performed by an administrator."

Debts must be paid before legacies, the will expressly directs payment of debts, and this is in the direction of the argument that the executor is to act here. Now as to the power of sale under the will.

Although the clause does not name the executors as the persons who are to sell the land (and at the same time names no other person or persons to sell), yet it is a power vested in the executor, and, in this case, in the survivor, by necessary implication. The land is to be sold for the purpose of paying legacies, which is a duty devolving upon an executor, and it follows, as a matter of course, that the testator intended his executor should make the sale to enable him to discharge the duty and trust of paying the legacies.

"It sometimes happens that a testator directs his estate to be sold for certain purposes without declaring by whom

55

the sale shall be made. In the absence of such declaration, if the fund be distributable by the executor, he will have the power by implication. In a case in the year book, 15 Henry VII, it was said by Rede, Tremail and Frowick, that if a man make his will that his land which his feoffees have shall be sold and aliened, and does not say by whom, then his executors shall have alien and not his feoffees " * * * "for the money to arise by the sale of the executors shall be assets in their hands, and therefore they shall sell. In a case in the 16th Elizabeth, a man devised his lands to his wife for life, and because he was in doubt whether he should have issue or not, he further willed by his will that if he should not have any issue by his wife, that then, after the death of his wife, the lands should be sold, and the money thereof coming distributed to three of his blood, and made his wife and another his executors, and died. The executors proved the will, the other executor died, and the wife sold the land; and it was the opinion of Wray and Southgate, Justices, that the sale was good, although it was not expressed in the will by whom the land should be sold, for the moneys coming of the sale are to be distributed by his executors to persons certain, as legacies, and it appertains to executors to pay the legacies, and therefore they shall sell. Also, they held that the lands should be sold in the life of the wife, otherwise they could never be sold; and also the surviving executor shall sell the lands because the authority doth survive. The same point was decided in the same way in a case in the 23d of Elizabeth. A man excepted out of his devise his manor of R., which he appointed to pay his debts, and made two executors and died. One of the executors died, the other proved the will and sold the manor, and by the opinion of the court the sale was valid, for such was the intention of the testator and not to leave the reversion to his heirs, but to trust his executors with the sale for the speedy payment of his debts." 1 Sugden on Powers (3d American ed.), 194.

A testator, after directing all his just debts to be paid, and bequeathing certain personal estate to his wife for life,

devised a freehold house to her for her natural life, with liberty to sell it, in case of a good offer, and invest the proceeds in five per cent. stocks for her benefit during her life. And in a subsequent part of the will, he desired that at the death of his wife, the residue of the estate might then be collected, including the proceeds of the house and lot, if not previously sold, to be then disposed of to good advantage, to be divided as directed. Three executors were named, Forbes, Cooper and the wife ; Forbes and the widow proved the will; and Cooper died in the lifetime of the widow. After the death of the widow, Forbes, the surviving executor, entered into a contract with Peacock for the sale of the house. . Held, upon a bill by the executor to compel the purchaser to take, " that whether there were or were not debts unpaid, and whether it was or was not uncertain whether any debts remained unpaid, the plaintiff had a power to sell and convey the house in fee-simple." Forbes *vs.* Peacock, 11 Meeson & Wellsby, 630.

The doctrine contended for was recognized by Chancellor Kent, who, in a case where the will directed that the real estate be sold at public vendue when it became necessary to raise money for the legacies, or when the children arrived at age, but did not say expressly who should sell, said : " I think as Lord Hardwicke did in a case somewhat similar (Black *vs.* Wilder, 1 Atkyns, 420), that it is a very reasonable construction that the power is given to the executors." Davons *vs.* Fanning, 2 Johns. Chan., 252.

The principle is settled by the Supreme Court in Peters *vs.* Beverly, 10 Peters, 562, and again in Taylor *vs.* Benham, 5 Howard, 267. In Peters *vs.* Beverly, the case in 2 Johns. Chan., the case of Johnson *vs.* Hewitt, 15 Johns., 349, and the quotation from Sugden, given above, are referred to. To the same effect is the case of Magruder *vs.* Peter, 11 G. & J., 217.

It may be said, as was argued below, that it was not the intention of the testator that his executors should sell, for one of them, the wife, must necessarily be incapable of acting before the time of sale arrived.

It is evident that he did not intend his wife to sell, and it is equally clear that he did intend that his "trusty and well beloved friend," Clarke, should sell and pay the legacies in the event he survived the testator's wife. But in such a case the power survives as a clear principle of law. So it was held in the case of Forbes vs. Peacock, which is directly in point, and which was a proceeding, not to protect the title of an innocent purchaser, but to compel a man to take a title which he did not want. Such is the doctrine stated by Sugden, and in the decisions to which he refers; so it was held in the cases in New York, the case in Maryland, and by the Supreme Court.

Against this current of authority there seems to be but one case, that of Bentham vs. Wiltshire, 4 Maddox Ch. Reps., 30, decided in 1819. The reasoning of that case is not satisfactory, and it is followed in 1843 by Forbes vs. Peacock, decided by a superior court, establishing directly the principle contended for by Mr. Clarke, and which was recognized by the court below.

Mr. Clarke was in the act of discharging the trust reposed in him by the will, having been called upon so to do by the parties in interest, and as his power is clear upon the authorities, it is respectfully submitted that the decree appealed from should be affirmed.

Mr. Chief Justice CARTTER delivered the opinion of the court.

In the case of Clarke vs. Boone, we have an application on the part of an executor to be advised as to his powers under the will of his testator to sell certain real estate. And in Hamilton and others against Clarke and others, we have a bill in equity, praying the appointment of trustees to sell the same property, and distribute the proceeds among the devisees.

The court below very properly consolidated the two cases, and they were heard there and are heard here together.

The value of the matter in dispute is not of very large import in itself. It is agreed that the property should be

sold. But the question is whether it should be sold by the executor, who will be entitled to charge the usual commission for such service or whether the court will appoint certain persons trustees to sell who have signified their willingness to perform the duty without charge to the estate. The first feature of this case which arrests our consideration is that all of the devisees and heirs of this estate unite in asking to be permitted to sell it in their own way and without cost. They state that the beneficiaries are numerous and poor, that the estate is small, and, therefore, ought not to be loaded down with commissions when it can be avoided.

Opposed to this is the remonstrance of the defendant Clarke, who does not claim to have been appointed a trustee specifically and in terms, to make sale of the property, but who claims to have inherited th t rig t under a general grant of trust to him and to an executrix with him jointly, she having expired, and he being her survivor. So that we have the question whether a naked trustee has such a vested interest in the estate of a testator that he can sell it against the wishes of those who own it, and charge the estate with his commissions when others are willing to make the necessary sale without charge.

Unless we are under imperious obligation to support such a trustee in the exercise of such a right, we ought not to do it. It would be doing scarcely less than committing a waste on an estate that could not afford it, and paying a man for performing a service, the gratuitous performance of which is tendered by others who are concurred with by all those who are interested in the estate.

We think that even if this trust was lodged specifically in this trustee jointly with another of whom he is the survivor, still it would be in the power of the devisees of this estate to say: "We do not need you; you were appointed trustee to sell this estate, provided, always, that we want you; that is the only office conferred upon you, and we assume the right as owners of this property, to say we do not want you to take a commission out of it. We can sell it without your assistance."

And unless the court were compelled to do otherwise, as it might be by the specific language of the will, it will say to him: "The owners of this property have a right to determine whether you shall sell it or not. You are appointed in he interest of the estate—not to devour it or to sell it against the will of those who own it."

Let us examine the defendant's position. He sets forth in his petition that he is the survivor of Jane E. Boone for the purposes of the execution of this will, and as such survivor he says he has a right, as a sole trustee, to proceed to sell the property. But is he such a survivor at all?

There was a joint trust created in the first clause of this will to these two executors. It provides:

"It is my will and I do order that all my just debts and funeral expenses be duly paid and satisfied; as soon as conveniently can be after my decease, out of the first moneys that shall come into the hands of my executors, from so much of my personal estate as may be necessary to meet and fully discharge the same."

And again in the last clause is the following:

"I hereby appoint my loving wife, Jane E. Boone, and my trusty and well beloved friend, Richard H. Clarke, executors of this my last will and testament."

These trustees proceeded to execute this trust jointly. They collected all the personal assets and paid all the debts, distributed the surplus to the devisees and finally settled their account; and then the defendant went to New York, and forgot that he was any longer a trustee until the death of his co-trustee, when he was written to, and he soon discovered that it might be possible to make a commission out of this estate, for there could not be any other motive in his desire to act as the salesman of it.

Now, when these two trustees had settled their joint account in which they were charged with a joint duty under this will, we hold that their connection with it ceased under the terms of the will. I, myself, was not of that impression when the argument was proceeding at bar, for the case was discussed upon the hypothesis that the defendant Clarke

was a surviving trustee.    But it will be seen, as we proceed
with the examination of this will, that he was no survivor
of any trustee.   The will outlives this joint trust, as will
be seen by its terms.   ,

. "Item 2d.  I give and bequeath to my beloved wife, Jane
E. Boone, in addition to her right of dower at common law,
all my personal property of every kind and description what-
soever and wheresoever situated, after the payment of my
just debts and funeral expenses, during her natural life, to
use, enjoy and dispose of the same, and at her death to dis-
pose of the same as she may deem fit and proper."

By that clause he disposed of his estate absolutely to his wife.

He proceeds—

"Item.  I give and devise to my said loving wife, Jane E.
Boone, all my real estate, being part of lot numbered 15 in
square 347, with the buildings thereon; and also the brick
house and lot in square No. 348, all being and lying in the
city of Washington, D. C., for and during her natural life,
to have, use and enjoy the same; and, at her death, it is my
will that the sum of $300 shall be paid to my beloved
nephew, Alexander Hamilton."

Hamilton is one of the complainants in the bill, and is
the only legatee, except the residuary legatees, denominated
in the will.   If he were not here, and here as a petitioner,
we might have some trouble about it.   But he is here ask-
ing the court to dispense with this trustee and his commis-
sions.

Again, and it is under this clause of the will that the con-
troversy before us chiefly arises—

. "Item.  It is my will, and I direct, that at the death of
my said wife, Jane E. Boone, all my real estate as herein
devised shall be sold, and, after paying the legacy above
mentioned to my said nephew, Alexander Hamilton, or to
his heirs, the residue to be divided into two equal parts
or moieties, the one-half or moiety to be equally divided
between my brothers, Sylvester Boone, Edward D. Boone,
and my sisters, Mary Rose Bowling and Sarah N. Hamilton
each to have equal shares, and in case of the death of either

of them, then to the heirs of said deceased in the same pro-
portion.

"Item. And it is my will that the other half or moiety of
the proceeds of my real estate go to the heirs of my said
wife after her death, or to such person or persons as she
may devise and bequeath the same to."

Now, that comes very near if it is not quite a fee simple.
A life estate is bequeathed to the wife, and upon her death
one-half of the remainder to her heirs or to whoever she
may appoint by will. It is only the provision directing the
sale of the property and the distribution of the proceeds, in-
stead of distributing the *corpus,* that takes from it, as it
seems to me, the character of a fee simple.

Now how do we find this estate. All of the debts of the
testator have been paid; all of the assets—personal assets—
have been collected; a final settlement has been had, and
these executors long ago ceased to act, one of them (the
widow) died, and the other removed to New York city.
They were charged with a joint trust for the purpose of
collecting the debts and assets. The collection of the assets
and the payment of the debts has been accomplished and
the final settlement had. Is not that a dissolution of this
joint trust? How is this executor to survive as a trustee of a
joint trust where the subject of the trust is dissolved by the
very terms of the will? For upon her death this estate goes
to the heirs of Mrs. Boone, and this surviving trustee, if he
could go on at all, would have to go upon half of this estate,
and he would have to survive a joint trustee who, under the
terms of the will, must be dead before the execution of the
trust can take effect.

We think that it was enough to dissolve this trust, as far
as it was created a joint trust, when the trustees had settled
their account. The widow was not a co-trustee to sell this
estate because, by its very terms, it was not to be sold until
after her death. Where, then, is there any joint trusteeship
of which he is the survivor?

But here is an estate to be sold, and devisees to realize
the fruits of the beneficence of their ancestor by will. They

all unite and come into a court of equity asking the appointment of trustees to sell—trustees who, are willing to perform the duty without charge—and we are asked to refuse this request because some time in the administration of this will Mr. Clarke acted as a joint trustee, which fact he claims gives him the right to sell and to charge his customary commissions, notwithstanding the protest of every party in interest.

We think the will of the testator puts us under no obligation to keep up the office of this complainant. We think his power as trustee is exhausted, and that common justice to the heirs of this estate requires that it should be sold as suggested in the bill filed by these parties; and that will be the order of the court, reversing the decree below.

Mr. Justice JAMES said:

I should have been very glad to unite with the court in its decree, but for the opinion I have as to the question of our power. It is very desirable that this estate should be promoted without expense. My doubt turns upon the existence of a minor among the distributees.

The will provided that the personalty should be enjoyed by the wife (not the realty) during her life, and subject to her disposal at her death. The land was to go to her for life, and at her death was to be sold. Nobody is specifically named as having the power of sale, and it is a question of the construction of the will whether Mr. Clarke has that power.

The American courts adopt this method of ascertaining whether a person is authorized to make the sale : They look at the whole will, and if they find that there is to be a sale and a distribution of the money proceeds, they hold that to be an act of administration, and that the person who is to make the distribution is to take the step necessary to do it.

Now, by this will, when the wife shall die, this estate is to be converted into personalty, and then the personalty is to be distributed, of course, by the executor, and that, I think, implies a power in him to make the sale.

It is said that this was a joint power. There was only one case cited to us which suggested that the power was given to the widow, and that is an English case, where just such a provision as this was made, viz., that there was to be a sale of the real estate and then a conversion into personalty at the death of the wife. But it was the other trust executor that died, and the wife made the sale under the power. It was held that she possessed the power, if she chose to abandon her life estate in the land. Following that decision, we should hold that there was a joint power in this executor and the wife, if she chose to act before her death, and let her life estate go. As a matter of construction, then, I hold, that the power is first, vested in the wife and her co-executor; and if the power is not exercised by them jointly during her life, which could have been done, as I have said, by the abandonment of the life estate, then it is vested in the surviving executor.

Of course it is competent for the parties to whom the distribution of the proceeds of sale was to be made, to say they do not want any sale; that they will take the realty itself. But I doubt the right to exercise that power in the present case, because one of the parties is a minor. A guardian *ad litem* has no power. He cannot consent for the minor. The others could all say they would take the land, but they do not propose to take it as such; they are not exercising that power, even if the minor might join with them. They do not propose to see aside the legacy, and instead of taking the proceeds, take the *corpus.* They propose to have the very thing done that the will proposed to have done, but they propose to do it themselves, instead of having this executor do it, as the will provides. But I think the will must be followed, if this estate is to be converted into personalty.

Our attention was called to the statute of Maryland of 1785, which says that where there is no person already designated for this purpose, the court will appoint one. The question first arose, whether that meant somebody specifically named. But the Maryland courts construing their own statutes, say, that if (as a matter of construction)

there is an implication from the will that there is a person authorized, then they will not make the appointment. That statute, therefore, does not, in my opinion, apply to this case, because there is a person here whom impliedly the will appoints. It was also said that we have power to administer estates; but that power is a power to administer them according to the will, if there is a will.

My conclusion, then, is based upon these facts: That this is a proposition to convert this realty into personalty, and not a proposition declining to have the conversion made, and to take it as land. The parties insist upon the very thing that the will directs, and if that is to be done, it is to be done as the testator said it should be done. The question is whether he has said so. I construe it that he has, when he says that this sale is to take place after the wife's death. He, by implication, gives the power to the surviving executor, clearly gives it to him, because he is to go right on and distribute the money as a matter of administration. If that is to be done, I think we have no power to change it. I should be very glad if we had, so as to save this charge upon the estate, but I am controlled by the question of our power to do so.